May it please the court, Alexander B. Wathen for Mr. Deitz, the appellant. Mr. Deitz would like to argue there are two things I want to focus on, that this was both a core and a non-core proceeding at the same time, and I also want to focus on why Arkeson does not affect this case. As far as the core and non-core issue, here we have essentially a California fraud claim under state common law, and to some extent supported by the California Civil Code, at least Section 1562. That's a paragraph 90 of the findings of fact and conclusions of law. So we have a non-core fraud claim that could have been brought in a California state court, or if there's a bankruptcy case, could have been held by a district judge. And we also have a core non-dischargeability action under three different subsections of Section 523. Mr. Deitz argues that there is no meaningful distinction between the counterclaim in Stern and any of the other cases with the same issue, just because the debtor is the one that is objecting to the non-Article III tribunal. The way that I read Stern, I don't see how that makes a difference under the interpretation or applicability of Article III in this case. The judgment itself, of course, it awards a number of monetary damages in the first six paragraphs, and then the final paragraph it declares that these awards are non-dischargeable The judgment is document number 76 in the findings of fact and conclusions of law, document number 75 in the bankruptcy court docket. The paragraph 90, of course, of the findings of fact and conclusions of law that cites the California Civil Code section on malice helps to show that this is decided under state law. The bankruptcy appellate panel, at least during oral argument, and I think to some extent the Fords have argued that these are really just a core proceeding. Of course, I don't think that matters under Stern, whether it's classified or core or not. It's essentially a common law and statutory state cause of action. So the same concerns are implicated under Article III. Are you familiar with a recent case, Carpenter's Pension Trust v. Moxley? I'm not familiar with that one. Which case was that again? It's at 734 F. 3rd, 864. I am not familiar with that one. Maybe Judge Fletcher, is there any particular issue that I can address in that case? I'm Silverman. That's Fletcher over there. But the head note is dischargeability dispute is necessarily resolved during process of allowing or disallowing claims against bankruptcy estate and does constitute a public's right dispute that bankruptcy court, even as a non-Article III court, may finally decide. How it applies to this case is, and this is a no-asset Chapter 7, creditors were instructed not to file a proof of claim. So there was no claims allowance process here. So the second part of the test, the way I read the Arkison case, is that the that doesn't apply since there's no claims allowance process. And the first part of the Arkison test, the question is whether it stems from the bankruptcy. The only part that stems from the bankruptcy is whether these are nondischargeable under Section 523 of the Bankruptcy Code. So the underlying claim, of course, stems from State law. I hope that addresses your question, Your Honor. And the also another thing about the Arkison case is, of course, and we don't know until we know how the Supreme Court decides this, why does the waiver argument not apply in this case? I would argue that it would have been waived in Stern as well. In this case, Stern was decided while the bankruptcy judge was considering the evidence. I believe it was, I believe the evidence was taken in April 2011, a couple of months before Stern. Stern, I think, was decided in late June 2011, after Stern, shortly after the bankruptcy judge issued his findings of fact conclusions law and the judgment. And at that point, Mr. Dietz brought this up on appeal. He was pro se. The complaint labeled it as all core, which, of course, I don't think that matters. His answer stated it was all core, but that was a form for pro se. A pro se cannot be expected to do it. But the really important distinction is that in Arkison that the executive benefits filed a motion to withdraw reference from the bankruptcy judge back to the court. And that motion, at some point, the way the court of appeals describes it in the opinion, so that would have been an affirmative objection to the bankruptcy court's jurisdiction. And then the withdrawal of that objection, that may be more like waiver of a known right. Here, we had an unknown right that wasn't even issued by anybody. The court essentially, and the parties to the extent they knew, thought or pretended it was all core. But so there couldn't have been a known right in this case. That's the most meaningful distinction that I can see. Kennedy. And let me ask you. This is neither here nor there. But is this really a collectible judgment against your guy? The – it has been partially collected, first through wage garnishment of Mr. Dietz, now former wife. There was a post proceeding in here. But any collections would go to the creditors, the Ford, not to the bankruptcy estate. So there's no bankruptcy interest in this judgment being collected. It is only collectible to a moderate extent. It probably will never be fully collected. Gotcha. The other criticisms that have been drawn is, well, this isn't covered by Stern, but most of the rationales for, in Stern, such as the public rights doctrine that Stern said doesn't apply here, the adjuncts to Article III judges that Stern said doesn't apply here, the administrative courts argument doesn't apply, the expertise argument doesn't apply, the – who appoints the judges doesn't apply, and also whether the filing of a proof of claim waives it. Stern rejected all these. And that would seem to apply equally to this case as in any other case. The – I don't think the founding fathers, when they wrote Article III, meant that it only applied in some cases where it mattered, whether it was a counterclaim or a claim in chief, whether Article III applies. If there's no more questions at this point, I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Russell. Thank you. Good morning. May it please the Court. My name is Tom Armstrong. I represent Mr. and Mrs. Ford, the appellees in this case. Today we're here to ask this Court to affirm the bankruptcy appellate panel and the bankruptcy court's decisions below relative to the adversary proceeding brought by the Fords against Mr. Dietz. I believe that there are two issues that are front and center to this appeal. The first issue is the constitutional authority of the bankruptcy court to enter a final judgment in the dischargeability context. I think that the discharge is one of the centermost and fundamental aspects of the bankruptcy code. I think the second point that I would like to make this morning was echoed earlier by Judge Silverman when Judge Silverman, in the prior case, said that you're bound by your own precedent. And the second point is the continued vitality of the Kennedy and the Sassoon decisions. I believe that the bankruptcy appellate panel, in the opinion of the panel and the concurring and jointer opinion by Judge Markell, very adequately addressed the issue, the stern issue in this case. I think that our brief also addressed those issues. There are some points today that I would like to make. First of all, I think that the constitutional authority issue before Your Honors is a matter of first impression at the circuit level. Through yesterday, shepherdizing cases, I see no authority at any circuit court level as to the constitutional authority. I did, however, pick up one case that I think is very instructive from the District of Massachusetts. There is a minority position out there that speaks of when a bankruptcy court issues a nondischargeability judgment and then tries to liquidate that judgment. There is a minority position out there that says those findings and conclusions should be certified to the district court. The Huang decision, it's H-U-A-N-G, decided January 7th of 2014. In 2014, Lexis 48 and 58 bankruptcy court decisions, 264 out of Massachusetts, dealt squarely with that issue. And the bankruptcy court there, noting that the bankruptcy appellate panel for the First Circuit had adopted the minority opinion, has now aligned itself with the decision of our bankruptcy appellate panel in the Dietz decision. The bankruptcy, that case, if I might just briefly read, and one of the points that Mr. Wathen made was the point about this being a no-asset case. The judge in that case wrote as follows, and I quote, Receiving a discharge is integral to the bankruptcy scheme, is unique to bankruptcy law, and is a core matter under 28 U.S.C. section 157b2i. Citations. As such, determinations that affect the scope of the discharge necessarily arise in or arise under the bankruptcy code. The important part here is that they fall squarely within the bankruptcy court's core jurisdiction, regardless of whether there is a potential impact on the bankruptcy estate or the distribution to creditors. To me, that reasoning is exactly in harmony with this court's prior decisions in Kennedy and Sassoon. Judge Pappas, in his opinion, stated succinctly, There are no state common law actions involved in this case. Exceptions to discharge claims arise solely under Title 11 and could not exist outside the federal bankruptcy system. Simply put, exceptions to discharge and liquidation of related claims are examples of the bankruptcy courts doing what they are supposed to do, and that's at the excerpts of record at page 35. That statement by Judge Pappas is, in my view, in complete conformity with Chief Justice Roberts' decision in Stern v. Marshall. Chief Justice Roberts said the holding in Stern was very narrow. He continued in footnote 3 that bankruptcy judges have the ability to determine core matters and to enter judgments on those matters, and he expressly included exception to discharge complaints. Judge Markell, in his jointer and concurring opinion, did a very nice analysis going all the way back to the Murrays-Lessee case, and he cited that case and stated that as Congress has the plenary power to regulate the bankruptcy discharge, a legislative status in an area unknown to the common law, which is what we're talking about today, Congress can generally delegate the implementation of a discharge to Article III judges. The Supreme Court noted in Stern v. Marshall that this circuit has correctly held that there's a two-step approach to determine core jurisdiction, or whether the bankruptcy court has jurisdiction, and that is if the court finds that it's a core matter and that it arises in or arises under Title XI. At the bankruptcy court level, that's exactly what occurred. In 1970, the United States Supreme Court in Brown v. Felsen stated that the issue of non-dischargeability under 523A2, A4, and A6 are vested or decided completely under federal law. They are matters within the exclusive jurisdiction of the federal courts, and that is to the Article III court, and by reference then to the Article I court, the bankruptcy court. I believe that Judge Pappas hit the nail on the head in this case. It's very, very, very similar to the Kennedy decision. It's on all fours with that case. Lastly, as to the on-bank request, as Judge Pappas noted in the BAP opinion, the holdings of Kennedy and Sassoon, in this case Deeps, are not clearly irreconcilable with Stern v. Marshall. Again, Stern, by its own etiquette, was very, very narrow in its holding. So we see no reason that an on-bank panel need to address the issue, as has been suggested by the appellant in this case. Should we hold the case for Arkeson? Pardon me? Is there any reason to hold the case for Arkeson? Is there any reason to? To hold this case for the resolution by the Supreme Court in the Arkeson. That's the appeal from Bellingham. I don't think so, Your Honor, because Bellingham was the issue of waiver, and that was a fraudulent conveyance case. And this, to me, this is at the heart of the very core of the bank. So you don't think Arkeson will affect Kennedy or Sassoon? I do not. I think Kennedy and Sassoon are quite well reasoned. I think Kennedy is almost on all fours with this case. And I think that the Deeps decision, when I said that this is a case of first impression before this Court, I think that the Kennedy decision was the first foot that hit the ground. Sassoon came next to talk about the liquidation of the damage issue. And I think that the final issue, as I mentioned before, the constitutional authority of a bankruptcy court to rule in a non-dischargeability issue is the next foot that hits the floor. And I think that for that reason, this is a case of first impression and a case of a very significant import to all the circuits and all of the courts in the United States. And if there are any further questions, I am prepared to rest. Thank you, Mr. Armstrong. Thank you very much, Your Honor. Mr. Wathen, you have the last word. I've got two minutes and change, though. Thank you, Your Honors. Regarding the Moxley case, I looked that up, and I don't see the kind of constitutional analysis that would be helpful. I mean, the – and I haven't had a chance to see if there was a claims allowance process in the Moxley case. But, of course, there was none in this case, so there wouldn't have been that protection to keep it constitutional, so to speak. So I don't think Moxley adds anything to it. And both Kennedy and Sassoon, those cases are dated. There was not the constitutional analysis. They talked about statutory jurisdiction under the sections of the – So do you think we need to hold those – do you think we need to hold this case for the resolution in Arkansas? One – I don't want to say that I can predict what the Supreme Court is going to do, but I would say it wouldn't hurt to hold it, given the – it could be unpredictable. But at the same time, Judge – at the same time, Judge Bivey, I think that the – I lost my train of thought. I'm sorry. The – I think the waiver issue that Mr. Dietz has positioned, that there is no waiver protects him from the consequences if the Supreme Court were to rule that it can be waived, because we just don't have the same facts as in Arkison, that kind of affirmative waiver, and it may be necessary to determine to what extent there was a waiver. Of course, in Stern v. Marshall, it wasn't brought up immediately. I think it came up at some point in the district court level, and it could be necessary to do an analysis as to what level of consent there are in the different cases. So that would be a good reason to hold it. But, of course, Mr. Dietz takes the position that it's unconstitutional for a bankruptcy judge to hold this regardless of what the Arkison case comes out to. Mr. Dietz also disagrees with the characterization of a bankruptcy court as an Article I court. It's not a separate court. It's – well, the statute calls it a bankruptcy court consisting of the judges. It's really the question, is the judge constitutionally qualified to enter a final judgment, especially on a non – well, I don't want to say non-court, but a non-bankruptcy central process. And I think unless there's any more questions with that, I think my time is up, and I'd like to thank the Court for hearing the case. Roberts. Thank you. The case is argued and submitted. We'll stand and assess for the morning.
judges: Silverman, Fletcher, Bybee